A11A1185, A11A1186. AN v. ACTIVE PEST CONTROL SOUTH,
INC.; and vice versa.
(720 SE2d 222)

BLACKWELL, Judge.

When Jo Ya An discovered that her home had been damaged extensively by termites, she sued Active Pest Control South, Inc. for professional negligence and breach of contract. A couple of years earlier, Active had agreed to monitor and treat the home for termites and to repair any damages that termites thereafter caused to the home. An does not dispute that the home sustained some termite damage before Active entered into this contract, and An also does not dispute that Active is not responsible for repairing damages that termites caused to the home before the date of the contract. So, everyone agrees that, if An is to prevail on her claims against Active, she must prove that the home sustained additional termite damage after the date of the contract and the extent of this additional damage. See *Orkin Exterminating Co. v. Durden*, 189 Ga. App. 479, 481-482 (1) (376 SE2d 376) (1988).

Active moved below for summary judgment, claiming that An cannot prove these things. In the course of discovery, An identified experts that would, she said, offer proof of these things in the form of opinion testimony, but Active said that the opinions of these experts are unreliable, and it moved to exclude their opinions under OCGA § 24-9-67.1. The court below heard all of these motions, but it granted the motion for summary judgment without ruling on the motions to exclude the opinions of the experts.

An appeals from the entry of summary judgment, and Active cross-appeals from an earlier order of the court below that struck two notices of nonparty fault that Active had filed under OCGA § 51-12-33, although Active concedes that, if it is entitled to summary judgment, the issues presented in its cross-appeal are moot.[1] On the appeal from the award of summary judgment, we conclude that, if the opinions of her experts are admissible, An may be able to prove

---

[1] An appeals in Case No. A11A1185, and Active cross-appeals in Case No. A11A1186.

that the home sustained additional termite damage after the date of the contract and the extent of that additional damage. Whether the opinions of the experts are admissible, however, is something that must be determined in the first instance by the court below, exercising its discretion under OCGA § 24-9-67.1. Accordingly, we vacate the award of summary judgment and remand for the court below to decide whether the opinions of the experts are admissible and then to reconsider the motion for summary judgment. Because it remains to be seen whether Active is entitled to summary judgment, it is unnecessary at this time for us to decide the issues presented in the cross-appeal, and we dismiss the cross-appeal without prejudice to Active raising those issues again in a later appeal.

*Case No. A11A1185*

The standard for summary judgment is settled and familiar. "Summary judgment is warranted when any material fact is undisputed, as shown by the pleadings and record evidence, and this fact entitles the moving party to judgment as a matter of law." *Strength v. Lovett*, 311 Ga. App. 35, 39 (2) (714 SE2d 723) (2011); see also *Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010). So, as we have explained before, "to prevail on a motion for summary judgment, the moving party must show that there is no genuine dispute as to a specific material fact and that this specific fact is enough, regardless of any other facts in the case, to entitle the moving party to judgment as a matter of law." *Strength*, 311 Ga. App. at 39 (2).

> When a defendant moves for summary judgment as to an element of the case for which the plaintiff . . . will bear the burden of proof at trial . . . the defendant may show that he is entitled to summary judgment either by affirmatively disproving that element of the case or by pointing to an absence of evidence in the record by which the plaintiff might carry the burden to prove that element.

Id.; see also *Lau's Corp. v. Haskins*, 261 Ga. 491, 491 (405 SE2d 474) (1991). We review an award of summary judgment de novo, viewing the evidence in the record, as well as all inferences that might reasonably be drawn from that evidence, in the light most favorable to the nonmoving party. *Cowart*, 287 Ga. at 624 (1) (a).

So viewed, the record shows that a Roswell homeowner discovered a termite infestation in his home, and in January 2004, he hired Active to treat this infestation. When Active personnel inspected the home at that time, they found evidence of termite damage in the

exterior wall of the dining room, a bathroom, the foyer, and the laundry room. Active personnel noted no other termite damage, although their inspection report disclaimed any responsibility to discover "hidden damage [that] is concealed, obstructed, or inaccessible to [Active personnel]." Active and the homeowner entered into a contract on January 13, 2004, by which Active agreed to provide "control of [s]ubterranean termites on the premises," not only by treating the termite infestation active at that time, but also by monitoring the home thereafter and making "treatments to the premises to remedy any new infestation after the [initial] control period." Active also promised to "make such repairs to the premises and contents to remedy any new damage caused by subterranean termites." This contract was assignable to any subsequent owner of the home.

In August 2006, the homeowner sold the home to An. Around the time of the sale, Active personnel inspected the home again and prepared an "Official Georgia Wood Infestation Inspection Report," which Active issued on the day before the sale closed and apparently was provided to An at or around the time of closing. According to this report, the 2006 inspection by Active personnel did not reveal any visible evidence of an active termite infestation. The report notes the earlier infestation, however, and includes an "inspection graph," which indicates existing termite damage in the baseboard of the master bedroom, den, and garage, as well as in the baseboard and ceiling of a room identified as "Room 1." Like the 2004 inspection report, the 2006 report disclaims any responsibility for "hidden damage [that] is concealed, obstructed or inaccessible to [Active personnel]." At closing, the homeowner assigned his contract with Active to An.

Soon after closing, An and her family set out to renovate the home, and as they removed wallpaper, they discovered additional termite damage. An contacted a home inspector, who examined the home in late August 2006 and found, in his words, "massive" termite damage. An later contacted the Georgia Department of Agriculture, and in December 2006, its inspectors found active termite infestations in the kitchen, foyer, master bedroom, bathroom, bathroom closet, den, and a secondary bathroom.

When Active failed to remedy the damages to the home, An sued, alleging that Active breached its contract and was negligent in its inspections and treatments of the home. In the course of discovery, An identified four potential expert witnesses, including Dr. Maxcy P. Nolan III, an entomologist, and Raymond W. Chulick, a general contractor with some expertise in estimating the costs of residential

construction and repair.[2] Nolan opined at his deposition that "at least 75 percent of the damage [to An's home] was [done] after 2004," and in an affidavit, he identified certain areas of the home that, he said, had seen active termite infestations since 2004 and had been damaged since January 2004. Chulick said at his deposition that repairing the termite damage would cost about $37,000, nearly $5,000 of which is attributable to damage caused by termites before Active contracted to treat the home. Active contends that these opinions are unreliable and, therefore, inadmissible, and Active filed motions under OCGA § 24-9-67.1 to exclude these opinions.[3] At the same time, Active also filed a motion for summary judgment, in which it argued, among other things, that An would be unable at trial to prove that termites caused any damage to the home after Active contracted to treat it and the extent of that damage. The court below heard argument on all of these motions. Then, without ruling on the admissibility of the expert opinions, the court granted the motion for summary judgment, concluding that An "failed to present evidence that the damage caused to the property was proximately caused by [Active's] negligence." The parties understand, as do we, the court below to have meant that it found no evidence in the record by which An might prove that termites caused damage to the home after Active contracted to treat it.[4]

As we said earlier, An does not dispute that Active is only responsible for damage caused by termites after January 13, 2004, when Active contracted to treat the home for termites, and she is right not to dispute it. After all, to the extent Active is liable under its contract for damage to the home, its liability is expressly limited by the terms of the contract to "any *new* damage caused by [s]ubterranean termites," and damage caused by termites before the date of the contract is not "new damage." Likewise, it is a settled principle of tort law that one "can be held financially responsible

---

[2] An also identified another entomologist and another construction expert as potential expert witnesses.

[3] Active filed motions to exclude all of the opinions offered by Chulick, to exclude the opinion of Nolan about the extent to which the home sustained damage after Active contracted to treat the home, to exclude several other opinions offered by Nolan, and to exclude some opinions offered by the other two potential expert witnesses. When the court below later convened a hearing on these motions, An announced that she did not oppose the motion to preclude her other construction expert — not Chulick — from offering certain opinions about necessary repairs to the home, and An conceded that Nolan would not be asked at trial to give any opinions about necessary repairs. These concessions have no bearing on our disposition of this appeal.

[4] The reference to "negligence" in the order awarding summary judgment to Active is somewhat confusing, inasmuch as a claim for breach of contract requires no showing of negligence. But we think we understand what the court below meant, and the parties share our understanding.

only for that damage proximately caused by its negligence," *Durden*, 189 Ga. App. at 481 (1), and damage that preexisted the initial inspection and treatment of the home could not possibly be caused by anything Active did or failed to do. An also does not dispute that the home sustained some termite damage before Active contracted to treat it, and that fact appears clearly enough in the record. The question, then, is whether An has come forward with some evidence from which a jury might properly conclude that termites caused additional damage to the home after Active contracted to treat it and, if so, whether An has some admissible evidence of the extent of such damage. See *American Pest Control v. Pritchett*, 201 Ga. App. 808, 809 (2) (412 SE2d 590) (1991) (general measure of damages for injury to improved property is cost of restoration to the condition immediately prior to injury); *Durden*, 189 Ga. App. at 482 (1) ("[w]hile appellee proved the total cost of repairs necessary to her home due to the damage done by termites . . . , she did not isolate the cost of those damages that occurred due to appellant's negligence"). To the extent that the opinions of her experts are admissible, we think An has come forward with such evidence.

When we review an award of summary judgment, we take the record as we find it, and the record now before us includes the opinions of several potential experts, including Nolan and Chulick. It is true, of course, that a court should consider only admissible evidence in connection with a motion for summary judgment, see *Nyankojo v. North Star Capital Acquisition*, 298 Ga. App. 6, 7 (679 SE2d 57) (2009), and Active argues on appeal, as it did below, that the opinions of these experts are inadmissible, raising some fair questions about the reliability of the opinions. Active asks, for instance, how Nolan can opine about the extent of damage done after Active contracted to treat the home when he did not perform the kinds of tests that, Active contends, are necessary to reliably determine the extent of damage done at any time, and Active asks how Nolan can make reliable findings about the damage done before January 2004 based on an inspection report that expressly disclaims any obligation to find hidden or latent damage. Perhaps An has good answers to these questions, or perhaps she does not, but the question for this Court is whether we ought to pass upon the admissibility of these expert opinions when the court below did not.

In some cases, we suppose, the admissibility or inadmissibility of evidence offered in support of, or in opposition to, a motion for summary judgment is so obvious that we properly can decide on appeal whether that evidence should have been considered, even without the court below having addressed it. But we must be cautious about deciding questions of admissibility — including questions of the admissibility of expert opinions — upon which a trial court has not

ruled. After all, questions of admissibility generally are committed to the sound discretion of the trial courts, see *Jones v. Forest Lake Village Homeowners Assn.*, 304 Ga. App. 495, 501 (2) (696 SE2d 453) (2010), and questions of the admissibility of expert opinions under OCGA § 24-9-67.1 are no different. See *Mason v. Home Depot USA, Inc.*, 283 Ga. 271, 279 (5) (658 SE2d 603) (2008); see also *Butler v. Union Carbide Corp.*, 310 Ga. App. 21, 25 (1) (712 SE2d 537) (2011). Whether an expert opinion ought to be admitted under OCGA § 24-9-67.1 is a question that is especially fit for resolution by a trial court because it requires a consideration of the facts and data upon which the opinion is based, whether the opinion is a product of "reliable principles and methods," and whether the opinion was reached by a reliable application of those principles and methods to the facts of the case. See OCGA § 24-9-67.1 (b). All these things may require fact finding, and trial judges are better suited to find facts than appellate judges. Perhaps for these reasons, the appellate courts consistently have said that it is the trial judge that is to act as a gatekeeper and assess the reliability of proposed expert testimony. See *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U. S. 579, 589 (II) (B) (113 SC 2786, 125 LE2d 469) (1993) ("[T]he trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."); see also *Kumho Tire Co. v. Carmichael*, 526 U. S. 137, 147 (II) (A) (119 SC 1167, 143 LE2d 238) (1999) ("In *Daubert*, this Court held that Federal Rule of Evidence 702 imposes a special obligation upon a trial judge to 'ensure that any and all scientific testimony . . . is not only relevant, but reliable.' "); *General Electric Co. v. Joiner*, 522 U. S. 136, 142 (II) (118 SC 512, 139 LE2d 508) (1997) (affirming "the 'gatekeeper' role of the trial judge in screening [expert opinion] evidence"); *Condra v. Atlanta Orthopaedic Group*, 285 Ga. 667, 671 (1) (681 SE2d 152) (2009) ("Under the *Daubert* line of cases, the trial judge acts as the gatekeeper in determining the admissibility of expert opinion . . . .").[5]

So, although Active makes a number of fair points about the reliability of the expert opinions on which An relies,[6] they are points more appropriately directed, we think, to the question of admissibility under OCGA § 24-9-67.1 and, therefore, to the court below. Active asserted challenges below to the admissibility of these opinions, but those challenges are not now before us because the court below never

---

[5] We look to *Daubert* and its progeny in construing OCGA § 24-9-67.1. See OCGA § 24-9-67.1 (f); *Mason*, 283 Ga. at 279 (5).

[6] We do not mean to suggest that these opinions are, in fact, unreliable, only that Active raises legitimate questions about the reliability of the opinions, questions to which An may well have good answers. That is for the court below to decide, and it is something about which we offer no opinion.

passed upon them, and we will not attempt to resolve them for the first time on appeal. Instead, we will consider only whether the record as we now find it — including the opinions of the experts — is enough to get An past summary judgment.

We think it is. Having reviewed the reports, affidavits, and depositions of these experts, especially those of Nolan and Chulick, we conclude that, if their opinions are admissible, they would permit a jury to find that the home was damaged by termites after January 13, 2004 and to assess the extent of that damage. Nolan has opined, for instance, about the extent to which the damage to the home was inflicted after January 13, 2004, and he has identified certain areas of the home in which, he believes, termites caused damage after January 2004,[7] and Chulick has opined about the costs of repairing this damage. These opinions would, if admitted, afford sufficient grounds for a jury to find that An has been injured and to put a value on her injuries, the very elements of proof that, the court below found, An cannot establish at trial. So, if the opinions of the experts are admissible, summary judgment is not warranted.[8]

Because Active properly raised questions about the admissibility of these opinions by filing motions under OCGA § 24-9-67.1, which the court below never decided, and because the questions of admissibility are, at least to some extent, dispositive of the question of summary judgment, we think that the court below should have addressed the questions of admissibility before deciding the question of summary judgment in this case.[9] Accordingly, we vacate the award of summary judgment and remand for the court below to resolve the

---

[7] Active does not contend that the opinions offered by Nolan are not sufficiently specific because he does not go through the home board by board and opine about when each board was damaged. We do not, therefore, address the question of specificity.

[8] We do not decide whether summary judgment would be appropriate if some or all of the expert opinions were excluded. The record now before us includes expert opinions that have not been excluded, and as we have said, we take the record as we find it. We offer no opinion about whether summary judgment might be warranted on some hypothetical record not now before us.

[9] We do not decide today that a trial court *always* must resolve a motion to exclude expert testimony under OCGA § 24-9-67.1 before it can decide a motion for summary judgment. After all, OCGA § 24-9-67.1 itself identifies no specific time by which a court must decide a motion to exclude expert testimony, except that it must decide any such motion "no later than the final pretrial conference contemplated under Code Section 9-11-16." OCGA § 24-9-67.1 (d); see also *Ford Motor Co. v. Gibson*, 283 Ga. 398, 404 (5) (659 SE2d 346) (2008) (noting that "the time period within which the trial court was *required* to hold a hearing and rule on the [OCGA § 24-9-67.1] motion had already passed") (emphasis supplied). But when the admissibility of an expert opinion has been challenged, and the admissibility of that opinion may be dispositive of a motion for summary judgment, as it may be here, it does not serve judicial economy to decide the motion for summary judgment without passing upon the admissibility of the expert opinion. In some other case, the question of summary judgment may not depend on the admissibility of expert opinions, and it may be perfectly sensible in such a case to defer ruling on a motion under OCGA § 24-9-67.1.

pending motions to exclude the opinions of Nolan and Chulick under OCGA § 24-9-67.1 and then to reconsider the motion for summary judgment.[10] Compare *McCall v. Henry Medical Center*, 250 Ga. App. 679, 685 (2) (551 SE2d 739) (2001) (vacating award of summary judgment and remanding for resolution of pending motion to compel discovery, where motion to compel concerned discovery of evidence that might be dispositive of motion for summary judgment) with *Tuck v. Marriott Corp.*, 187 Ga. App. 567, 569 (2) (370 SE2d 795) (1988) ("Although the grant of summary judgment while a motion to compel discovery is pending is generally not condoned, where, as here, the disallowed discovery would add nothing of substance to the party's claim, reversal is not required.").

### Case No. A11A1186

Active cross-appeals from an order striking two notices of nonparty fault that Active filed pursuant to OCGA § 51-12-33. In its briefs, Active concedes that, if it is entitled to summary judgment, the propriety of striking these notices is a moot issue. Whether Active is entitled to summary judgment is still an open question, one for the court below to address on remand, and the issues presented in the cross-appeal may well turn out to be moot. Consequently, it is unnecessary for us to pass upon these issues at this time, and we dismiss the cross-appeal without prejudice to Active raising these issues again in any subsequent appeals. See generally *Bibbins v. State*, 280 Ga. 283, 284-285 (627 SE2d 29) (2006) ("Georgia appellate courts are not authorized to render advisory opinions as to potential error.") (citations omitted); see also *Southern Business Machines of Savannah v. Norwest Financial Leasing*, 194 Ga. App. 253, 260 (II) (390 SE2d 402) (1990).

*Judgment vacated and case remanded with direction in Case No. A11A1185. Appeal dismissed without prejudice in Case No. A11A1186. Barnes, P. J., and Adams, J., concur.*

DECIDED NOVEMBER 15, 2011 —
RECONSIDERATION DENIED DECEMBER 1, 2011.

*Richard S. Alembik, Willis L. Miller IV*, for appellant.

---

[10] Before the court below reconsiders summary judgment, it also should decide any other timely challenges to the admissibility of evidence that are material to the motion for summary judgment.

*Scrudder, Bass, Quillian, Horlock, Taylor & Lazarus, Matthew P. Lazarus, Jason D. Hergenroether*, for appellee.

